**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| EBONIE HAMER, Plaintiff, | ) | Case: 1:26-cv-14088 |
| v. | ) | Jury Trial Demanded |
| HEALTH CARE SERVICE CORPORATION, A MUTUAL LEGAL RESERVE COMPANY, d/b/a BLUE CROSS BLUE SHIELD, Defendant. | ) | |

**COMPLAINT**

Plaintiff, Ebonie Hamer ("Plaintiff"), by and through undersigned counsel, hereby files this Complaint against Health Care Service Corporation, a Mutual Legal Reserve Company, d/b/a Blue Cross Blue Shield ("Defendant"), and in support states as follows:

**NATURE OF PLAINTIFF'S CLAIMS**

1. This lawsuit arises under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.* ("ADA"), seeking redress for Defendant's disability-based discrimination, failure to accommodate Plaintiff's disability, and retaliation against Plaintiff for engaging in protected activity under the ADA.

2. This lawsuit further arises under the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601 *et seq.* ("FMLA"), seeking redress for Defendant's interference with Plaintiff's FMLA rights and retaliation against Plaintiff for exercising those rights.

**JURISDICTION AND VENUE**

3. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(4) as the ADA and FMLA are federal statutes. Jurisdiction is further conferred

by 42 U.S.C. § 12117(a) as to Plaintiff's ADA claims and 29 U.S.C. § 2617(a)(2) as to Plaintiff's FMLA claims.

4. Venue properly lies in the Northern District of Illinois, Eastern Division, pursuant to 42 U.S.C. § 2000e-5(f)(3), as incorporated for ADA claims by 42 U.S.C. § 12117(a), and pursuant to 28 U.S.C. § 1391(b) because Defendant operates and transacts business in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. The unlawful employment practices alleged herein were committed in this District, and Plaintiff would have continued to work in this District but for those unlawful practices.

## ADMINISTRATIVE PREREQUISITES

5. On or about September 28, 2026, Plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 440-2026-11641, attached hereto as Exhibit "A." Plaintiff requested that the charge be filed with both the EEOC and the State or local agency, and the charge was cross-filed with the Illinois Department of Human Rights.

6. On October 5, 2026, the EEOC issued a Notice of Right to Sue to Plaintiff on Charge No. 440-2026-11641, which Plaintiff received shortly thereafter (attached hereto as Exhibit "B").

7. Plaintiff files this action within ninety (90) days of her receipt of the EEOC's Notice of Right to Sue.

8. All conditions precedent to suit under the ADA have occurred or otherwise been satisfied.

## PARTIES

9. Plaintiff, Ebonie Hamer, is an individual and resident of Chicago, Cook County, Illinois.

10. At all times relevant to the allegations of this Complaint, Defendant, Health Care Service Corporation, a Mutual Legal Reserve Company, d/b/a Blue Cross Blue Shield, was an Illinois mutual legal reserve company engaged in the health insurance business, doing business in and for Cook County, Illinois at 11840 S. Marshfield Ave., Chicago, IL 60643-4902.

11. At all times relevant, Plaintiff was an employee and Defendant was an employer within the meaning of the ADA and FMLA.

12. At all times relevant, Defendant employed at least fifteen (15) employees and was a covered employer under the ADA.

13. At all times relevant to Plaintiff's FMLA claims, Defendant was an employer within the meaning of the FMLA and employed fifty (50) or more employees within seventy-five (75) miles of Plaintiff's worksite.

## BACKGROUND FACTS

14. Plaintiff was employed by Defendant from on or about November 30, 2020, until her termination on or about September 4, 2026.

15. Plaintiff most recently worked as a Customer Account Representative 2 in Defendant's Government Pre-Authorization Department, earning approximately $20.75 per hour.

16. As a Customer Account Representative 2, Plaintiff's duties included but were not limited to assisting healthcare providers with prior authorizations for Medicare and Medicaid.

17. Plaintiff met or exceeded the obligations of her job duties.

18. Plaintiff suffers from mental impairments, including depression, post-traumatic stress disorder ("PTSD"), and other mental health conditions, which affect her ability to function and require ongoing treatment.

19. Plaintiff's disability substantially limits one or more major life activities, including but not limited to working, and the operation of major bodily functions, including brain function, within the meaning of 42 U.S.C. § 12102(1)(A), § 12102(2)(A), and § 12102(2)(B).

20. To the extent Plaintiff's depression and PTSD are episodic or in remission, those impairments substantially limit one or more major life activities when active. 42 U.S.C. § 12102(4)(D).

21. Regardless of Plaintiff's disability, she was able to perform the essential functions of her position with or without reasonable accommodation.

22. In or around January 2026, Plaintiff took leave after her six-year-old daughter experienced a medical episode and was hospitalized.

23. During that period, Plaintiff also received mental health treatment on the recommendation of her therapist, who recommended that she participate in an intensive outpatient program, and Plaintiff attended therapy daily from approximately 9:00 a.m. to 1:00 p.m.

24. Defendant approved Plaintiff for continuous FMLA leave from on or about January 27, 2026, through February 18, 2026.

25. Defendant's leave records state that Plaintiff's FMLA entitlement exhausted on or about February 18, 2026, after three (3) hours and forty (40) minutes of leave, and that Plaintiff later regained FMLA entitlement on an intermittent basis.

26. Defendant approved intermittent FMLA leave for Plaintiff from on or about February 19, 2026, through April 12, 2026, and its records identify March 13, 2026 (four (4) hours

and twenty (20) minutes), March 20, 2026 (eight (8) hours), April 1, 2026 (eight (8) hours), and April 9, 2026 (eight (8) hours), as dates on which FMLA protection applied.

27. Plaintiff remained on leave until on or about April 10, 2026.

28. In or around April 2026, before her return to work on or about April 13, 2026, Plaintiff asked Defendant to allow her to return to work at 50% of her schedule for her first week, followed by a return to full-time work.

29. Plaintiff's requested accommodation would have enabled her to perform the essential functions of her position.

30. In or around April 2026, Plaintiff's supervisor, Kamla Thomas ("Ms. Thomas"), told Plaintiff that Human Resources approval was needed before any schedule adjustment could be made.

31. On or about April 10, 2026, Defendant directed Plaintiff to return to work in the office at the start of her scheduled shift for a full workday.

32. On or about April 13, 2026, Defendant did not implement the gradual return schedule Plaintiff had requested and did not engage with Plaintiff to discuss whether an adjusted schedule could be provided.

33. Plaintiff returned directly to her full-time position on or about April 13, 2026, without the gradual return schedule she had requested.

34. Defendant knew that Plaintiff's leave and treatment were related to a serious medical condition because Plaintiff requested and took medical leave for that treatment, Defendant approved that leave under the FMLA, and Plaintiff asked for an accommodation concerning her return to work.

35. At all times relevant to Plaintiff's FMLA claims, Plaintiff had been employed by Defendant for at least twelve (12) months.

36. During the twelve (12) months preceding August 14, 2026, Plaintiff worked at least 1,250 hours for Defendant.

37. On or about August 14, 2026, Plaintiff needed leave because she was receiving ongoing treatment for her depression, PTSD, and other mental health conditions, and because her daughter was hospitalized again and required Plaintiff's care.

38. On or about August 14, 2026, Plaintiff requested leave through Defendant's leave administrator, FMLASource, which received her request that day.

39. Defendant used FMLASource to administer and process Plaintiff's leave requests.

40. Plaintiff's leave began on or about August 14, 2026, and Plaintiff remained absent from work on leave from that date through the date of her termination.

41. Plaintiff's pending request to FMLASource sought intermittent FMLA leave from August 25, 2026, through December 31, 2026, with medical certification due on August 30, 2026.

42. During the same period, Plaintiff also had a separate claim for short-term disability leave.

43. Plaintiff was scheduled to return to work on October 1, 2026, and Defendant was aware of her expected return date.

44. Plaintiff submitted the required medical information to her healthcare provider, as she had done for her prior leave.

45. FMLASource received Plaintiff's information but did not properly process the documentation.

46. The first paperwork Plaintiff received stated that her intermittent FMLA request had been denied.

47. Plaintiff later learned, after her healthcare provider contacted her and informed her that the wrong documentation had been submitted, that the documentation had been entered incorrectly and related to her short-term disability leave rather than her FMLA request.

48. Plaintiff did not learn of the documentation problem until in or around late August or early September 2026.

49. On or about August 31, 2026, while Plaintiff was on leave, Defendant issued Plaintiff a return-to-work notice concerning her attendance.

50. On or about September 4, 2026, Defendant, through Plaintiff's supervisor, Tammi Conner ("Ms. Conner"), terminated Plaintiff's employment effective immediately.

51. After Plaintiff requested FMLA leave on or about August 14, 2026, Defendant terminated Plaintiff's employment on or about September 4, 2026.

52. Defendant stated that the reason for the termination was "unsatisfactory attendance," based on Plaintiff's alleged violation of the return-to-work terms issued on August 31, 2026.

53. The absences on which Defendant relied occurred while Plaintiff was on leave for her own medical conditions and her daughter's hospitalization, and while her FMLA request was pending.

54. On or about September 4, 2026, Plaintiff emailed Ms. Conner and told her that FMLASource had received her documentation and that her doctor was out of the office, but Defendant had already sent Plaintiff's termination letter.

55. Defendant lists Plaintiff's termination date as August 31, 2026, a date on which Plaintiff was on leave.

56. FMLASource stated that it would process the correct documentation, but Defendant had already terminated Plaintiff's employment.

57. Plaintiff did not receive return-to-work information from Defendant until on or about September 17, 2026, nearly two weeks after her termination.

58. Since her termination, Plaintiff has continued to suffer ongoing emotional and psychological harm as a result of Defendant's conduct, including anxiety about her ability to provide for her family, depression about her future, and fear regarding her daughter's health, and she has continued to receive mental health treatment.

59. Since her termination, Plaintiff has not obtained new employment, has received no pay from Defendant, and has lost her employer-sponsored health insurance coverage.

## COUNT I
**Violation of the Americans with Disabilities Act, 42 U.S.C. § 12112(a)**
**(Disability-Based Discrimination)**

60. Plaintiff repeats and re-alleges all preceding paragraphs as though fully set forth herein.

61. Plaintiff was disabled within the meaning of the ADA and was qualified to perform the essential functions of her position with or without reasonable accommodation.

62. Defendant also regarded Plaintiff as having an impairment within the meaning of 42 U.S.C. § 12102(1)(C) and § 12102(3)(A).

63. Plaintiff met or exceeded the obligations of her job duties.

64. Defendant subjected Plaintiff to termination because of Plaintiff's disability.

65. Defendant's stated reason for the termination, unsatisfactory attendance, was a pretext for disability discrimination, as the absences on which Defendant relied were caused by Plaintiff's disability and her related medical treatment.

66. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff because of her disability in violation of the ADA, 42 U.S.C. § 12101 *et seq*.

67. Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages pursuant to 42 U.S.C. § 1981a(b)(1).

68. As a direct and proximate result, Plaintiff suffered and continues to suffer damages, including lost wages and benefits, emotional distress, humiliation, and other pecuniary and non-pecuniary losses.

**COUNT II**
**Violation of the Americans with Disabilities Act, 42 U.S.C. § 12112(b)(5)(A)**
**(Failure to Accommodate)**

69. Plaintiff repeats and re-alleges all preceding paragraphs as though fully set forth herein.

70. Plaintiff was a qualified individual with a disability.

71. Defendant was aware of Plaintiff's disability and need for reasonable accommodation.

72. Plaintiff requested the reasonable accommodation of a gradual return to work at 50% of her schedule for her first week following her medical leave, followed by a return to full-time work.

73. Plaintiff's requested accommodation would have enabled her to perform the essential functions of her position.

74. Defendant failed to engage in the interactive process and failed to provide Plaintiff a reasonable accommodation.

75. By virtue of the conduct alleged herein, Defendant failed to accommodate Plaintiff's disability in violation of the ADA, 42 U.S.C. § 12101 *et seq.*

76. Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages pursuant to 42 U.S.C. § 1981a(b)(1).

77. As a direct and proximate result, Plaintiff suffered and continues to suffer damages, including lost wages and benefits, emotional distress, humiliation, and other pecuniary and non-pecuniary losses.

## COUNT III
**Violation of the Americans with Disabilities Act, 42 U.S.C. § 12203(a)**
**(Retaliation)**

78. Plaintiff repeats and re-alleges all preceding paragraphs as though fully set forth herein.

79. Plaintiff engaged in protected activity under the ADA by requesting a reasonable accommodation for her disability and by requesting leave for treatment of her disability.

80. Defendant knew that Plaintiff engaged in protected activity.

81. Defendant subjected Plaintiff to termination.

82. Plaintiff's protected activity was a but-for cause of Defendant's adverse employment action.

83. By virtue of the conduct alleged herein, Defendant retaliated against Plaintiff in violation of the ADA, 42 U.S.C. § 12203.

84. As a direct and proximate result, Plaintiff suffered and continues to suffer harm, including lost wages and benefits and the loss of her employment, for which she seeks back pay, front pay, reinstatement, and other equitable relief available under the ADA's retaliation provision.

## COUNT IV
**Violation of the Family and Medical Leave Act, 29 U.S.C. § 2615(a)(1)**
**(FMLA Interference)**

85. Plaintiff repeats and re-alleges all preceding paragraphs as though fully set forth herein.

86. Plaintiff was eligible for FMLA leave and suffered from a serious health condition that entitled her to protected leave. Plaintiff also needed to care for her daughter, who had a serious health condition, which separately entitled her to protected leave.

87. Plaintiff provided Defendant sufficient notice of her need for leave.

88. Defendant counted Plaintiff's FMLA-qualifying absences against her, terminated her employment while her request for FMLA leave was pending, and failed to restore her to her position.

89. By virtue of the conduct alleged herein, Defendant interfered with, restrained, or denied Plaintiff's exercise of FMLA rights in violation of 29 U.S.C. § 2615.

90. Defendant's interference with Plaintiff's FMLA rights was willful and was not undertaken in good faith or on reasonable grounds.

91. As a direct and proximate result, Plaintiff suffered damages recoverable under 29 U.S.C. § 2617, including lost wages and benefits, the loss of her employer-sponsored health insurance coverage, and other monetary losses.

## COUNT V

**Violation of the Family and Medical Leave Act, 29 U.S.C. § 2615(a)(2)**
**(FMLA Retaliation)**

92. Plaintiff repeats and re-alleges all preceding paragraphs as though fully set forth herein.

93. Plaintiff was eligible for FMLA leave and provided Defendant notice of her need for leave.

94. Plaintiff engaged in protected activity by requesting and using FMLA leave.

95. Defendant knew that Plaintiff requested and used protected leave.

96. After Plaintiff requested and used protected leave, Defendant subjected Plaintiff to termination.

97. Plaintiff's request for and use of FMLA leave was a negative factor in Defendant's adverse action.

98. By virtue of the conduct alleged herein, Defendant retaliated against Plaintiff for exercising her FMLA rights in violation of 29 U.S.C. § 2615.

99. Defendant's retaliation against Plaintiff was willful and was not undertaken in good faith or on reasonable grounds.

100. As a direct and proximate result, Plaintiff suffered and continues to suffer damages recoverable under 29 U.S.C. § 2617, including lost wages and benefits and other monetary losses.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and award the following relief:

a. Back pay and other lost compensation;

b. Payment of interest on all recoverable back pay and other monetary losses;

c. Reinstatement or, in the alternative, front pay;

d. Lost employment benefits;

e. Compensatory damages on Counts I and II, including damages for emotional distress, humiliation, and mental anguish, to the extent authorized by law;

f. Punitive damages on Counts I and II, to the extent authorized by law;

g. Liquidated damages under the FMLA;

h. Appropriate declaratory and equitable relief;

i. Reasonable attorneys' fees and costs to the extent authorized by law;

j. Prejudgment and post-judgment interest to the extent authorized by law; and

k. Any other relief that the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 12, 2026.

***/s/ Travis Lampert***
**TRAVIS P. LAMPERT, ESQ.**
**MOHAMMED O. BADWAN, ESQ.**
**SULAIMAN LAW GROUP LTD.**
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone (630) 575-8180
Fax (630) 575 - 8188
tlampert@atlaslawcenter.com
mbadwan@atlaslawcenter.com
*Attorney for Plaintiff*